**Appeal of PHAROS-REPORTER PUB-**       **Docket No. 557.**
**LISHING CO.**

> Where a corporation, upon its organization, acquired the business and assets of a partnership, consisting of tangible and intangible property, and paid one-half of the purchase price to one partner in cash and one-half to the remaining partner in stock, *held* that, for the purpose of computing invested capital of the corporation and applying the 20 per cent limitation of section 207 of the Revenue Act of 1917 relating to intangibles, the transfer is to be regarded as one made by the partnership and not as a transfer by each partner of his interest in the tangibles and intangibles, one for cash and the other for stock. Therefore, the taxpayer did not receive one partner's interest in the intangibles for cash.

Submitted February 27, 1925; decided March 25, 1925.

*Neal Brewster, Esq.,* and *Clifford Yewdall, C. P. A.,* for the taxpayer.

*Robert A. Littleton, Esq.,* for the Commissioner.

Before STERNHAGEN, TRAMMELL, and TRUSSELL.

The deficiency stated in the notice from which appeal is taken is the sum of $1,323.67, made up of deficiencies for all of the years 1913 to 1918, inclusive. The issue raised by the appeal is, however, confined to the computation of invested capital as the basis of the

profits tax for the calendar year 1917, and particularly as to the exclusion of a portion of intangibles acquired by the taxpayer at the time of its organization in May, 1913. The profits tax for 1918 was computed under section 302 of the Revenue Act of 1918, and the taxpayer assigns no error in respect of this.

### FINDINGS OF FACT.

The taxpayer is a New York corporation organized May 5, 1913. About that time it acquired the business and assets, not including accounts receivable, print paper and ink, of the copartnership of Louthain & Barnes, which had theretofore been the owner and publisher of a newspaper called "Pharos." This partnership was composed of B. F. Louthain and J. W. Barnes. This purchase was under an agreement whereby "Louthain & Barnes, a copartnership composed of Benjamin F. Louthain and John W. Barnes," sold to the taxpayer "all of the presses   *   *   *   and all property and machinery of every kind connected with the printing and publishing of said paper belonging to said copartnership   *   *   *   including the good will thereof and the list of subscribers thereto and the business of the paper, not including print paper and ink now owned by the partnership," for which the taxpayer agreed " to pay the sum of thirty-six thousand ($36,000) dollars, as follows: Seventeen thousand five hundred ($17,500) dollars cash to John W. Barnes, and eighteen thousand ($18,000) dollars of the common stock of said company and one thousand ($1,000) dollars of the preferred stock thereof to Benjamin F. Louthain." Barnes and Louthain separately and severally guaranteed the property free from debts or encumbrances and indemnified the taxpayer against claims. The assets acquired from the partnership were valued as follows: Tangibles, $14,195.46; intangibles (circulation and good will), $15,804.54; total, $30,000. Instead of the amounts set forth in the written agreement the taxpayer paid $15,000 in cash and $15,000 in stock, the cash being received by Barnes and the stock by Louthain.

The taxpayer also purchased the property and assets of a newspaper called the "Reporter," theretofore owned by the Sutton family, which property and assets were valued as follows: Tangibles, $11,829.54; intangibles (circulation and good will), $13,170.46; total, $25,000. The consideration paid by the taxpayer was 90 shares of preferred stock, $9,000; 73 shares of common stock, $7,300; cash, $8,700; total, $25,000. On March 3, 1917, the outstanding capital stock of the taxpayer was $58,500. The Commissioner in computing invested capital for the year 1917 excluded from this amount $13,-970.46 by the application of the 20 per cent limitation provision of section 207 of the Revenue Act of 1917, i. e., the Commissioner allowed as the value of intangibles only $11,700, being 20 per cent of the outstanding stock of $58,500.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

STERNHAGEN: The taxpayer, relying entirely upon the agreement of sale to it by the copartnership of Louthain & Barnes, contends

that the intangibles of the copartnership were transferred one-half by Barnes for cash and one-half by Louthain for stock, while the Commissioner contends that all the copartnership assets, both tangible and intangible, were paid in to the taxpayer for the aggregate of cash and stock, and that the cash should properly be allocated to the tangibles and the stock to the remaining tangibles and intangibles. In essence, the taxpayer argues that each of the two partners was the owner of a half interest in all the property of the partnership; therefore what Barnes conveyed was his half interest in the intangibles as well as the tangibles; that the payment by the taxpayer was by express agreement one of cash to Barnes for his interest in all assets, and hence that his interest in the intangibles was specifically bought for cash,—a subtle argument which we think is unsound.

It is true in the absence of an agreement of the partners *inter sese* to the contrary that Barnes owned an undivided interest in all the copartnership assets, both tangible and intangible, and it is also true that the taxpayer agreed to pay to Barnes $15,000 cash. But these facts do not support the conclusion that the cash was paid for any particular assets or of Barnes' share in any particular assets. The corporation bought nothing directly from Barnes individually. Its purchase was from the copartnership of Louthain & Barnes, from which it bought all the assets enumerated, including the good will and list of subscribers and business of the firm. For these assets it agreed to pay, and did pay, $15,000 cash and $15,000 stock. By the agreement with its vendor, the copartnership, the cash went to Barnes and the stock to Louthain. Whether this was in proportion to the interests of these individuals in the copartnership does not appear, and the corporation had no reason to care. All it was concerned with was its total payment for the business and its assets. It might, to be sure, have accomplished this end by making a separate purchase from each individual partner of his interest—one for cash and the other for stock—but it wisely chose to acquire the whole business from its owner, the partnership. We say wisely because the law regards the ownership of the partnership not as an aggregate of separate ownerships but as one undivided whole, in which each partner has an undivided interest, and hence the purchase from the partnership was clear and complete and did not involve the purchaser in any subsequent question of the proper apportionment between the partners themselves or the extent of the interest conveyed. But whatever its reason, it did not buy from either individual, and it may not be taxed as if it did.

The Commissioner has computed the tax in harmony with the following: Cash was paid in to the amount of $23,700. This was applied to the purchase of tangibles, of which there were admittedly $26,025 acquired from the copartnership and from the Sutton family owning the "Reporter." The stock issued was applied to the remaining tangibles and the intangibles. The tangibles were included in invested capital at their full value. The intangibles were included subject to the limitation of 20 per cent of the capital stock outstanding March 3, 1917, as prescribed in section 207 of the Revenue Act of 1917. We regard this computation as proper in this case. The only alternative would be the application of section 210, and that we are not asked to consider.